FILED
2018 Apr-23  PM 04:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **JACKIE WILLIAMS and LEE SIMS**, on behalf of themselves and all others similarly situated,<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>**FACEBOOK, INC.** and **CAMBRIDGE ANALYTICA, LLC,**<br><br>    **Defendants.** | **Case No.: 2:18-cv-00535-RDP**<br><br><br>**FIRST AMENDED<br>CLASS ACTION COMPLAINT**<br><br><br>  **JURY TRIAL DEMANDED** |

Plaintiffs Jackie Williams and Lee Sims, by and through undersigned counsel, file their First Amended Class Action Complaint against Defendants Facebook, Inc. ("Facebook") and Cambridge Analytica, LLC ("CA") (collectively "Defendants"), on behalf of themselves and all others similarly situated, as described below.

### NATURE OF THE CASE

1.     This case is about an unprecedented attack on democracy and privacy.  The Defendants conspired and secretly used Personal Information[1] to influence the numerous elections across the nation, including the 2016 Presidential election. Facebook allowed CA to "mine" the highly-sensitive profile data from over 50 million Facebook users in order manipulate voters in the hopes of controlling the results of the elections. CA and other companies used this mined

---

[1] Personal Information, as used herein, includes at least the following Facebook user data for the Plaintiffs and Class Members: about me, actions, activities, birthday, check-ins, education history, events, games activity, groups, hometown, interests, likes, location, notes online presence, photo and video tags, photos, questions, relationship details, relationships, religion, politics, status, subscriptions, website, and work history.

Personal Information to unleash a highly-targeted and inflammatory advertisement campaign meant to influence the elections.

2.    Defendants' conduct shows an utter disregard for privacy and protection of Facebook users' Personal Information. To be clear, this Personal Information was supposed to be protected, and used for only expressly disclosed and limited purposes. However, Defendants exceeded whatever limited authorization they had been granted by allowing the improper collection and use of the Personal Information. Facebook knew this improper data collection was occurring and how the Personal Information would eventually be used.  However, Facebook failed to stop it, or purposely avoided monitoring the eventual uses of the Personal Information in order to profess ignorance at a later date.

3.    By accessing and unlawfully using this highly sensitive, personal information, the Defendants greatly exceed the limited authorization granted by Facebook users. This conduct constitutes a violation of the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.* ("SCA"), Alabama Deceptive Trade Practices Act ("ADTPA"), Alabama's Right to Publicity Act (ARPA), and common law.

4.    This case presents a prototypical situation for class treatment. Defendants' conduct—including all relevant authorizations, practices, conduct, representations, and omissions—is uniform among all class members. The application of this common course of conduct to shared law will determine liability for the class as a whole, ensuring that the rights of thousands are vindicated through the efficiency of a single trial.

## PARTIES

5.    Plaintiff Jackie Williams is a citizen of Alabama who resides in Jefferson County, Alabama. Her experience with the conduct complained of herein is typical of the experience of the

putative class.  Ms. Williams created a Facebook account on or about 2010, and has maintained the account to the present day.  Furthermore, she recalls seeing numerous ads on Facebook related to the 2016 elections, including the United States Presidential Election.

6.     Plaintiff Lee Sims is a citizen of Alabama who resides in Talladega County, Alabama. His experience with the conduct complained of herein is typical of the experience of the putative class.  Mr. Sims created a Facebook account on or about 2005, and has maintained the account to the present day.  Furthermore, he recalls seeing numerous ads on Facebook related to the 2016 elections, including the United States Presidential Election. Mr. Sims also received a notification from Facebook saying that one of his friends had used the application called "This Is Your Digital Life." Facebook stated, "As a result, the following information was likely shared with 'This Is Your Digital Life': Your public profile, Page likes, birthday, and current city."  The notification further stated, "A small number of people who logged into 'This Is Your Digital Life' also shared their own News Feed, timeline, posts and messages which may have included posts and messages from you. They may have shared your hometown."

7.     Defendant Facebook, Inc. is a Delaware corporation with its principal place of business in Menlo Park, California, and which does business in this judicial district. Its registered agent in Alabama is Corporation Service Company, Inc., 641 South Lawrence Street, Montgomery, Alabama 36104. Facebook operates an online social media and social networking service that allows people to communicate with their family, friends, and coworkers.

8.     Defendant Cambridge Analytica, LLC is a Delaware limited liability company with its principal place of business in New York, New York, and which does business in this judicial district. CA is political consulting group that combines data mining, data brokerage, and data analysis with strategic communication for the electoral process.

## JURISDICTION AND VENUE

9.      This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, for claims that arise under the Stored Communications Act, 18 U.S.C. § 2701 *et seq*.

10.      Furthermore, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). Diversity jurisdiction exists as Defendants are citizens of a state other than the state of which Plaintiffs are citizens. Plaintiffs, on behalf of themselves and the Class, seek more than $5,000,000, and has a good faith basis to believe that more than $5,000,000 is at issue in this case.

11.      The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

12.      Venue in this case is proper under 28 U.S.C. § 1391 in this Court because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

13.      The Court has personal jurisdiction because Defendants conduct business in this District and a substantial part of the events and injuries giving rise to the Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

14.      Facebook unlawfully shared the Personal Information from tens of millions of users with CA, which used this data in excess of any authorization in an effort to manipulate 2016 elections across the nation, including the 2016 Presidential Election. The Washington Post recently reported that Facebook allowed an app developer working for CA "to gain access to information about an estimated tens of millions of people. The group included both the 270,000 Facebook users who downloaded a psychological testing app and the Facebook "friends" of those people."[2]

---

[2] Craig Timberg & Tony Romm, *Facebook may have violated FTC privacy deal, say former federal officials, triggering risk of massive fines*, Wash. Post, March 18, 2018, *available at*

15.     Facebook announced on April 4, 2018, that most of its 2 billion users likely have

had their personal information scraped by outsiders without the users' explicit permission.[3] The

Washington Post reported:

> As part of the disclosure, Facebook for the first time detailed the scale of the
> improper data collection for Cambridge Analytica, a political data consultancy
> hired by President Trump and other Republican candidates in the last two federal
> election cycles. The political consultancy gained access to Facebook information
> on up to 87 million users, most of them Americans, Facebook said. Cambridge
> Analytica obtained the data to build "psychographic" profiles that would help
> deliver targeted messages intended to shape voter behavior in a wide range of U.S.
> elections.
>
> …
>
> The data obtained by Cambridge Analytica was more detailed and extensive,
> including the names, home towns, work and educational histories, religious
> affiliations and Facebook "likes" of users, among other data.
>
> Facebook initially had sought to downplay the problem, saying in March only that
> 270,000 people had responded to a survey on an app created by the researcher in
> 2014. That netted Cambridge Analytica the data on the friends of those who
> responded to the survey, without their permission. But Facebook declined to say at
> the time how many other users may have had their data collected in the process.
> The whistleblower, Christopher Wylie, a former researcher for the company, said
> the real number of affected people was at least 50 million.[4]

16.     In another report, The Guardian published a report explaining an elaborate voter

targeting program developed and used by CA to influence voter preferences in the 2016

presidential election for the United States for the benefit of then candidate Donald Trump.[5] The

---

https://www.washingtonpost.com/news/the-switch/wp/2018/03/18/facebook-may-have-violated-ftc-privacy-deal-say-former-federal-officials-triggering-risk-of-massive-fines/?utm_term=.d94857f6568f.

[3] *See* Craig Timberg, Tony Romm, & Elizabeth Dwoskin, *Facebook said the personal data of most its 2 billion users has been collected and shared with outsiders*, April 4, 2018, *available at*
https://www.washingtonpost.com/news/the-switch/wp/2018/04/04/facebook-said-the-personal-data-of-most-its-2-billion-users-has-been-collected-and-shared-with-outsiders/?utm_term=.f383e3303a96.

[4] *Id.*

[5] *See* Carole Cadwalladr, '*I made Steve Bannon's psychological warfare tool': meet the data war whistleblower,* The Guardian*, March 18, 2018, *available at* https://www.theguardian.com/news/2018/mar/17/data-war-whistleblower-christopher-wylie-faceook-nix-bannon-trump.

Guardian's report details CA's voter targeting techniques using information the newspaper acquired from former CA employee and whistleblower named Christopher Wylie.[6]

17.     Wylie has personal knowledge of the scheme, because he was a lead engineer in the project and was employed by CA. Wylie explained the scheme in detail.[7] According to the report, CA used a massive database, filled with Facebook users' covertly acquired Facebook data, to target voters with information that was designed to manipulate or influence their voting preferences.

18.     Another report from The Guardian explained exactly how the Personal Information was harvested:

> Aleksandr Kogan, separately from his work at Cambridge University. Through his company Global Science Research (GSR), in collaboration with Cambridge Analytica, hundreds of thousands of users were paid to take a personality test and agreed to have their data collected for academic use.

> However, the app also collected the information of the test-takers' Facebook friends, leading to the accumulation of a data pool tens of millions-strong. Facebook's "platform policy" allowed only collection of friends' data to improve user experience in the app and barred it being sold on or used for advertising. The discovery of the unprecedented data harvesting, and the use to which it was put, raises urgent new questions about Facebook's role in targeting voters in the US presidential election. It comes only weeks after indictments of 13 Russians by the special counsel Robert Mueller which stated they had used the platform to perpetrate "information warfare" against the US.[8]

19.     Facebook allowed this activity via its "friends permission" functionality.

> "…[Kogan] advertised for people who were willing to be paid to take a personality quiz on Amazon's Mechanical Turk and Qualtrics. At the end of which Kogan's app, called thisismydigitallife, gave him permission to access their Facebook profiles. And not just theirs, but their friends' too. On average, each 'seeder' – the people who had taken the personality test, around 320,000 in total – unwittingly

---

[6] *Id.*

[7] *Id.*

[8] *See* Carole Cadwalladr & Emma Graham-Harrison, *Revealed: 50 million Facebook profiles harvested for Cambridge Analytica in major data breach,* The Guardian*, March 17, 2018, available at* https://www.theguardian.com/news/2018/mar/17/cambridge-analytica-facebook-influence-us-election.

gave access to at least 160 other people's profiles, none of whom would have known or had reason to suspect."[9]

20.     Kogan did all of this in the employ and as an agent of CA to help aggregate a massive dataset that would allow CA to target users for the purpose of influencing their political preferences through advertising and misinformation. According to the report, "email correspondence between CA employees and Kogan, [shows] that Kogan had collected millions of profiles in a matter of weeks. But neither Wylie nor anyone else at CA had checked that it was legal."[10]

21.     According to the New York Times,

[Kogan] ultimately provided over 50 million raw profiles to the firm, Mr. Wylie said, a number confirmed by a company email and a former colleague. Of those, roughly 30 million — a number previously reported by The Intercept — contained enough information, including places of residence, that the company could match users to other records and build psychographic profiles. Only about 270,000 users — those who participated in the survey — had consented to having their data harvested. [11]

22.     Facebook knew about the data extraction. According to Wylie, "[Facebook's] security protocols were triggered because Kogan's apps were pulling this enormous amount of data, but apparently Kogan told them it was for academic use. So they were like, 'Fine'."[12] However, the data extraction was not for academic use, it was for commercial use by Kogan and CA.

23.     Facebook first learned that the data extraction was not for academic use when the Guardian published its first report about CA acquiring Facebook data and using it to support Ted

---

[9] Cadwalladr, *supra* note 3.
[10] *Id.*
[11] Matthew Rosenberg, Nicholas Confessore, & Carole Cadwalladr, *How Trump Consultants Exploited the Facebook Data of Millions*, N.Y. Times, March 17, 2018, *available at* https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html.
[12] Cadwalladr, *supra* note 3.

Cruz in his campaign to be the United States Republican candidate.[13] This report was published in December 2015, but Facebook failed to take action until months later, "And then, all they did was write a letter."[14] In August 2016, "Facebook lawyers wrote to Wylie, who left CA in 2014, and told him the data had been illicitly obtained and that 'GSR was not authorized to share or sell it'. They said it must be deleted immediately."[15] However, Facebook took made no effort to confirm the data was actually deleted. Wylie told The Guardian, "'I already had. But literally all I had to do was tick a box and sign it and send it back, and that was it,' says Wylie. 'Facebook made zero effort to get the data back.' There were multiple copies of it. It had been emailed in unencrypted files."[16]

24.     A spokesperson for Facebook told the Guardian, "If these reports are true, *it's a serious abuse of our rules*. Both Aleksandr Kogan as well as the SCL Group and CA certified to us that they destroyed the data in question."[17] Mark Zuckerberg, Facebook's CEO, admitted in an interview on CNN on March 21, 2018, "This was a major breach of trust, and I'm really sorry that this happened. You know, we have a basic responsibility to protect people's data and if we can't do that then we don't deserve to have the opportunity to serve people."[18]

25.     Facebook's egregious conduct related to the protection of its users' Personal Information has triggered an investigation by the Federal Trade Commission and Congress. On March 19, 2018, Bloomberg published an article entitled "FTC Probing Facebook For Use of Personal Data, Source Says," disclosing that the U.S. Federal Trade Commission ("FTC") is

---

[13] Ben Jacobs, "*Ted Cruz using firm that harvested data on millions of unwitting Facebook users*," The Guardian (December 11, 2015), *available at* https://www.theguardian.com/us-news/2015/dec/11/senator-ted-cruz-president-campaign-facebook-user-data.
[14] *Id.*
[15] Cadwalladr, *supra* note 3.
[16] *Id.*
[17] *Id.*
[18] *See* Danielle Wiener-Bronner, *Mark Zuckerberg has regrets: 'I'm sorry that this happened'*, CNN (March 21, 2018), *available at* http://money.cnn.com/2018/03/21/technology/mark-zuckerberg-apology/index.html.

"probing whether Facebook violated terms of a 2011 consent decree of its handling of user data that was transferred to Cambridge Analytica without [user] knowledge."[19] Under the 2011 settlement with the FTC, Facebook "agreed to get user consent for certain changes to privacy settings as part of a settlement of federal chargers that is deceived consumers and forced them to share more Personal Information than they intended." The article further stated that "if the FTC finds Facebook violated terms of the consent decree, it has the power to fine the company more than $40,000 a day per violation."[20]

26.     Defendant Facebook's "Data Use Policy," that was effective at the time, stated in part:

**How we use the information we receive**

We use the information we receive about you in connection with the services and features we provide to you and other users like your friends, our partners, the advertisers that purchase ads on the site, and the developers that build the games, applications, and websites you use. For example, in addition to helping people see and find things that you do and share, we may use the information we receive about you:

- as part of our efforts to keep Facebook products, services and integrations safe and secure;
- to protect Facebook's or others' rights or property;
- to provide you with location features and services, like telling you and your friends when something is going on nearby;
- to measure or understand the effectiveness of ads you and others see, including to deliver relevant ads to you;
- to make suggestions to you and other users on Facebook, such as: suggesting that your friend use our contact importer because you found friends using it, suggesting that another user add you as a friend because the user imported the same email address as you did, or suggesting that your friend tag you in a picture they have uploaded with you in it; and
- or internal operations, including troubleshooting, data analysis, testing, research

---

[19] David McLaughlin, Ben Brody, & Billy House, *Facebook Draws Scrutiny From FTC, Congressional Committees*, Bloomberg (March 20, 2018), available at https://www.bloomberg.com/news/articles/2018-03-20/ftc-said-to-be-probing-facebook-for-use-of-personal-data.
[20] *Id.*

and service improvement.[21]

27.    Defendant Facebook's "Data Use Policy" stated:

While you are allowing us to use the information we receive about you, you always own all of your information. Your trust is important to us, which is why we don't share information we receive about you with others unless we have:

-   received your permission;
-   given you notice, such as by telling you about it in this policy; or
-   removed your name and any other personally identifying information from it.[22]

28.    The Federal Trade Commission issued guidance on how to appropriately respond to data breaches, titled "Data Breach Response: A Guide for Business," in which it advises, "When your business experiences a data breach, notify law enforcement, other affected businesses, and affected individuals."[23]

## CLASS ACTION ALLEGATIONS

29.    Plaintiffs bring this lawsuit as a putative class action on behalf of themselves and all others similarly situated as members of the proposed Class(es), pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

30.    The proposed Class is defined as:

All individuals in the United States who registered for Facebook accounts and whose Personal Information was obtained from Facebook without authorization or in excess of authorization.

31.    The proposed Alabama Subclass is defined as:

All individuals in Alabama who registered for Facebook accounts and whose Personal Information was obtained from Facebook without authorization or in excess of authorization.

---

[21]    *Data Use Policy*, Facebook, Inc. (Date of Last Revision: November 15, 2013), https://www.facebook.com/full_data_use_policy.
[22]    *Id.*
[23]    FEDERAL TRADE COMMISSION, "Data Breach Response: A Guide for Business" (2016).

32.     Excluded from the Class are (1) Defendants, any entity or division in which Defendants have a controlling interest, and Defendants' legal representatives, officers, directors, assigns, and successors; (2) the judge to whom this case is assigned and any member of the judge's staff; and (3) governmental entities.

33.     Plaintiffs maintain the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded, further divided into subclasses, or modified in any other way.

### A.     Numerosity

34.     As described above, Plaintiffs reasonably believe that there are more than 80 million people who have been affected by Defendants' wrongdoing. The number of potential Class Members is enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits and efficiencies to all parties and to the Court. Class Members are readily identifiable from information and records in Defendants' possession, custody, or control, and/or can readily self-identify based upon objective criteria.

### B.     Typicality

35.     Plaintiffs' claims are typical of the claims of the Class because, among other things, Plaintiffs and the Class Members were injured through the uniform misconduct by Defendants. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class members, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and those of other Class Members arise from the same operative facts and are based on the same legal theories. The factual bases of Defendants' misconduct are common to all Class Members and represent a common course of misconduct resulting in injury to all Class Members.

C.     **Adequate Representation**

36.     Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation, including consumer and commercial class actions.

37.     Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so. Neither Plaintiffs nor their counsel has interests adverse to those of the Class.

D.     **Predominance of Common Issues**

38.     There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any question affecting only individual Class Members, the answers to which will advance resolution of the litigation as to all Class Members. These common legal and factual issues include, but are not limited to, the following:

a.     Whether Facebook had a duty to safeguard the Personal Information of its users;

b.     Whether CA's use of Personal Information Exceeded Any Authorization by Facebook users;

c.     Whether Facebook was aware of CA's use of Personal Information;

d.     Whether CA's use of Personal Information was improper;

e.     Whether Facebook took reasonable steps to ensure CA's proper use of Personal Information;

f.     Whether Facebook had a duty to monitor and monitor the use its users Personal Information;

g.     Whether Defendants' conduct was negligence;

h.      Whether Defendants' conduct constitutes a civil conspiracy;

i.      Whether Plaintiffs and Class Members were the owners and possessors of their Personal Information;

j.      Whether Defendants' conduct constitutes a conversion;

k.      Whether Defendants have engaged in other unconscionable, false, misleading, or deceptive act or practice through the handling of Facebook users' Personal Information;

l.      Whether Defendants acted knowingly in their deceptive and misleading conduct;

m.      Whether Defendants' conduct violates the Alabama Deceptive Trade Practice Act, Alabama Code §§ 8-19-1, *et seq*.;

n.      Whether Defendants' conduct violates the Alabama's Right to Publicity Act, Alabama Code § 6-5-770, *et seq*.;

o.      Whether Class Members' Personal Information was obtained by CA;

p.      Whether Defendants' conduct violated the SCA, 18 U.S.C. §§ 2701, *et seq*.; and

q.      Whether Plaintiffs and Class Members are entitled to actual, statutory, or other forms of damages, and other monetary relief.

**E.      <u>Superiority</u>**

39.      Plaintiffs and Class Members have all suffered and will continue to suffer damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

40.     Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of an individual Class Member's claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.

41.     Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

<u>**COUNT ONE**</u>
**VIOLATION OF STORED COMMUNICATIONS ACT, 18 U.S.C. § 2701, et seq.**
**(Against Facebook)**

42.     All allegations and paragraphs in this complaint are incorporated by reference. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

43.     The SCA allows a private right of action against anyone who "(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." See 18 U.S.C. § 2701(a); *see also* 18 U.S.C. § 2707(a). The court may assess damages under the SCA including "actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation, but in no case shall a person entitled to recover receive less than the sum of $1,000." 18 U.S.C. § 2707(c).

44.     The Stored Communications Act prohibits a person from intentionally accessing without (or in excess of) authorization a facility through which an electronic communications service is provided and thereby obtaining an electronic communication while it is in "electronic

storage." The SCA defines "electronic storage" as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and any storage of such communication by an electronic communication service for purposes of backup protection of such communication."

45.     Facebook is a "person" within the meaning of the SCA.

46.     The servers Facebook uses to provide its electronic communications service to Facebook users are a "facility" within the meaning of the SCA. Moreover, due to the structure and design of Facebook's servers, the sharing of personal data among Facebook users results in and constitutes interstate data transmissions.

47.     Facebook exceeded any authorization it may have had related to Plaintiffs and Class Members' stored electronic communications by its unlawful collection, disclosure, and divulging of the content of Plaintiffs and Class Members' communication and information to third parties, including CA.

48.     As a direct and proximate result of Defendants' actions, Plaintiffs and the Class Members suffered injury and are entitled to statutory damages, actual damages, and reasonable attorney's fees and costs, as well as declaratory and injunctive relief.

**COUNT TWO**
**VIOLATION OF STORED COMMUNICATIONS ACT, 18 U.S.C. § 2701, et seq.**
**(Against CA)**

49.     All allegations and paragraphs in this complaint are incorporated by reference. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

50.     The Stored Communications Act prohibits a person from intentionally accessing without (or in excess of) authorization a facility through which an electronic communications service is provided and thereby obtaining an electronic communication while it is in "electronic

storage." The SCA defines "electronic storage" as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and any storage of such communication by an electronic communication service for purposes of backup protection of such communication."

51.     CA is a "person" within the meaning of the SCA.

52.     The servers Facebook uses to provide its electronic communications service to Facebook users are a "facility" within the meaning of the SCA.

53.     The acquisition of Plaintiffs and Class Members' Personal Information, which constitutes a "communication" pursuant to the SCA, by CA exceeded authorization to the Personal Information at issue in this lawsuit.

54.     As a direct and proximate result of Defendants' actions, Plaintiffs and the Class Members suffered injury and are entitled to statutory damages, actual damages, and reasonable attorney's fees and costs, as well as declaratory and injunctive relief.

**COUNT THREE**
**VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT,**
**ALABAMA CODE § 8-19-1, *et seq.***
**(On Behalf of Alabama Subclass)**

55.     All allegations and paragraphs in this complaint are incorporated by reference. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

56.     Facebook's marketing, promotion, and advertising of its social networking service constitutes trade or commerce affecting the people of Alabama within the definition of Alabama Code §§ 8-19-3 and 8-19-5.

57.     CA's marketing, promotion, and advertising of data unlawfully collected from Facebook and sold campaigns, including Donald Trump's 2016 Presidential Campaign, constitutes

trade or commerce affecting the people of Alabama within the definition of Alabama Code §§ 8-19-3 and 8-19-5.

58.     Facebook and CA are both considered a "person" as within the definition of Alabama Code § 8-19-3.

59.     Plaintiffs and members of the putative Alabama Class are "consumers" within the definition of Alabama Code § 8-19-3.

60.     As set out herein, Facebook and CA have each engaged in deceptive practices in the course of its business through the collection, distribution, and selling of its users' Personal Information, including by:

> a.     exceeded any authorization it may have had related to Plaintiffs and Class Members' stored electronic communications by its unlawful collection, disclosure, use, selling, and divulging of Plaintiffs and Class Members' Personal Information. Alabama Code § 8-19-5(25, 27));
> b.     engaging in other unconscionable, false, misleading, or deceptive acts or practices, as described herein. Alabama Code § 8-19-5(27);

61.     Defendants' acted knowingly, with actual awareness or such awareness as a reasonable person should have considering all the surrounding circumstances.

62.     Defendants do not maintain a place of business and do not keep assets in Alabama.

63.     Neither Plaintiffs, nor any member of the putative Alabama Class, reasonably could have discovered (or did in fact discover) the nature of the deceptive conduct described herein. As a direct result of Defendants' violations of the Alabama Deceptive Trade Practices Act, Plaintiffs and members of the putative class have been damaged.

64.     As a direct and proximate result of Defendants' actions, Plaintiffs and the Class Members suffered injury and are entitled to the damages owed to them, including:

> a.     Any actual damages sustained by Plaintiff, or the sum of $100, whichever is greater;
> b.     Three times actual damages;

c.      Appropriate injunctive relief;
d.      Statutory interest;
e.      Attorneys' fees and costs; and
f.      Such other and further relief as the Court deems proper.

## COUNT FOUR
## VIOLATION OF ALABAMA RIGHT TO PUBLICITY ACT,
## ALABAMA CODE § 6-5-770, *et seq.*
## (On Behalf of Alabama Subclass)

65.     All allegations and paragraphs in this complaint are incorporated by reference. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

66.     Alabama's Right to Publicity Act (ARPA) protects the right of publicity of any indicia of identity.  An "indicia of identity" is defined as including "those attributes of a person that serve to identify that person to an ordinary, reasonable viewer or listener, including, but not limited to, name, signature, photograph, image, likeness, voice, or a substantially similar imitation of one or more of those attributes." Ala. Code § 6-5-771(1).

67.     Facebook and CA are considered Persons under ARPA. Ala. Code § 6-5-771(2).

68.     ARPA prohibits any person or entity from using Personal Information for purposes of advertising, fund-raising or solicitation of donations. Specifically, the ARPA states:

Liability for use of indicia of identity without consent.

(a) Except as otherwise provided in this article, **any person or entity who uses or causes the use of the indicia of identity of a person**, on or in products, goods, merchandise, or services entered into commerce in this state, or **for purposes of advertising** or selling, or soliciting purchases of, products, goods, merchandise, or services, or **for purposes of fund-raising or solicitation of donations**, or for false endorsement, **without consent shall be liable under this article to that person, or to a holder of that person's rights**.

Ala. Code § 6-5-771(2) (emphasis added).

69.     The Personal Information sold by Facebook to CA for commercial use includes indicia of identity as defined by ARPA. The Personal Information is used by the Defendants in the highly-targeted political advertisements and fund-raising solicitations.

70.     Defendants violated the ARPA by using Plaintiffs and Class Members' Personal Information "for purposes of advertising…or for purposes of fund-raising or solicitation of donations…"

71.     ARPA provides that the Plaintiffs shall elect between damages "within a reasonable time after the close of discovery…." Ala. Code § 6-5-774.

72.     As a direct and proximate result of Defendants' actions, Plaintiffs and the Class Members suffered injury and are entitled to seek damages owed to them, including:

g.     Statutory damages in the amount of $5,000 per occurrence;
h.     Compensatory damages, including the profits derived by the Defendants from use of Personal Information;
i.     Punitive damages;
j.     Appropriate injunctive relief;
k.     Injunctive relief;
l.     Statutory interest; and
m.     Such other and further relief as the Court deems proper.

## COUNT FIVE
### NEGLIGENCE

73.     All allegations and paragraphs in this complaint are incorporated by reference. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

74.     Defendants owed a duty to Plaintiffs and the Class Members to exercise reasonable care in obtaining and protecting their Personal Information, including keeping it from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties. The Defendants knew that the Personal Information of the Plaintiffs and Class Members was personal, sensitive, and valuable.

75.     As described herein, Defendants breached this duty by negligently exceeding their authorization related to the use Plaintiffs and Class Members' Personal Information. Furthermore, Defendants breached their duties by failing to adopt, implement, and maintain adequate security

measures to safeguard the Personal Information, or by obtaining that Personal Information without authorization. Said negligence caused the Plaintiffs and Class Members' injuries and damages.

76.     As a direct and proximate result of Defendants' actions, Plaintiffs and the Class Members suffered injury and are entitled to all available damages, including compensatory and punitive damages in such amount as a jury may award, interest, costs, and such other, further, and different relief to which they may be entitled.

## COUNT SIX
## CONVERSION

77.     All allegations and paragraphs in this complaint are incorporated by reference. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

78.     Plaintiffs and Class Members were the owners and possessors of their Personal Information. As the result of Defendants' wrongful conduct, Defendants have unlawfully deprived or interfered with the Plaintiffs and Class Members' rights to possess and control such property, to which they had a superior right of possession and control at the time of conversion.

79.     Defendants' wrongful conduct is a wrongful taking, wrongful detention, illegal assumption of ownership, and illegal use of the Plaintiffs and Class Members' property.

80.     As a direct and proximate result of Defendants' actions, Plaintiffs and the Class Members suffered injury and are entitled to all available damages, including compensatory and punitive damages in such amount as a jury may award, interest, costs, and such other, further, and different relief to which they may be entitled.

## COUNT SEVEN
## WANTONNESS AND PUNITIVE DAMAGES

81.     All allegations and paragraphs in this complaint are incorporated by reference. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

82.     As described in detail throughout this Complaint, Defendants consciously or deliberately engaged in oppression, wantonness, or malice with regard to the Plaintiffs and Class Members. Defendants' conduct was carried on with a reckless or conscious disregard of the rights or safety of others.

83.     As a direct and proximate result of Defendants' actions, Plaintiffs and the Class Members suffered injury and are entitled to all available damages, including compensatory and punitive damages in such amount as a jury may award, interest, costs, and such other, further, and different relief to which they may be entitled.

### COUNT EIGHT
### CIVIL CONSPIRACY

84.     All allegations and paragraphs in this complaint are incorporated by reference. To the extent necessary, this cause of action is pleaded in the alternative to the other causes of action.

85.     As described herein, Defendants knew or had reason to know that Plaintiffs and Class Members' personal information was being used in a manner that exceed the of the terms of Facebook's agreement with its users. Defendants combined to do certain acts that are either (1) civilly unlawful or (2) lawful but accomplished by unlawful means. Specifically, the Defendants combined to:

      a.     Violate the Stored Communications Act, 18 U.S.C. § 2707, *et seq.*;

      b.     Violate the Alabama Deceptive Trade Practices Act, Alabama Code § 8-19-1, *et seq.*;

      c.     Violate the Alabama's Right to Publicity Act, Alabama Code § 6-5-770, *et seq.*;

      d.      Negligently caused the Plaintiffs and Class Members damage by breaching their duty to excise reasonable care in obtaining and protecting Personal Information;

      e.      Convert Plaintiffs and Class Members' Personal Information; and

      f.      Wantonly injury the Plaintiffs and Class Members.

86.      There was an agreement and meeting of the minds by the Defendants to commit these acts.

87.      As a direct and proximate result of Defendants' actions, Plaintiffs and the Class Members suffered injury and are entitled to all available damages, including compensatory and punitive damages in such amount as a jury may award, interest, costs, and such other, further, and different relief to which they may be entitled.

### PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and each Class Member, seek:

(1)    An order certifying the proposed class and any appropriate subclasses, and appointing Plaintiffs as class representatives and Plaintiffs' counsel as class counsel;

(2)    Damages available under:

    a.  Stored Communications Act, 18 U.S.C. § 2707, *et seq.*;

    b.  Alabama Deceptive Trade Practices Act, Alabama Code § 8-19-1, *et seq.*;

    c.  Alabama's Right to Publicity Act, Alabama Code § 6-5-770, *et seq.*;

(3)    Punitive damages;

(4)    Reasonable attorney's fees and costs;

(5)    Injunctive relief, including an order prohibiting Defendant from further unlawful use of Personal Information;

(6)    Full restitution; and

(7)    All other relief which the Court or jury should find appropriate.

**JURY TRIAL DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: April 23, 2018.                      Respectfully submitted,

/s/Brad Ponder
Luke Montgomery (ASB-3810-A55M)
Brad Ponder (ASB-0965-P56P)
MONTGOMERY PONDER, LLC
2226 1st Avenue South, Suite 105
Birmingham, AL 35233
Phone: 205.201.0303
Fax: 205.208.9443
luke@montgomeryponder.com
brad@montgomeryponder.com